IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| JUANITA L. BREDING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 6:15-cv-00716-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, District Judge,

Plaintiff Juanita Breding appeals the Commissioner's decision denying her application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Breding alleged disability beginning February 25, 2011, due to anxiety with agoraphobia and panic, depression, fibromyalgia, degenerative disc disease in the thoracic region of the spine, arthritis, and irritable bowel syndrome. Admin. R. 19. The Administrative Law Judge ("ALJ") applied the sequential disability determination process described in 20 C.F.R. § 416.920. Admin. R. 21-28. She determined that during the relevant time, fibromyalgia, mild thoracic degenerative disc disease, a mood disorder, and anxiety with agoraphobia and panic limited Breding's ability to do basic work. Admin. R. 21. The ALJ determined that despite these impairments, Breding retained

the residual functional capacity to perform a range of light work involving standing or walking up to four hours in a workday, but that she required the ability to sit or stand at will. The ALJ found she had limited ability to climb, reach in all directions, perform gross and fine manipulations, and engage in postural activities such as stooping, bending, kneeling and so forth. The ALJ further found her limited to simple, routine, repetitive tasks in goal oriented work, as opposed to assembly or pace work. Admin. R. 24.

The vocational expert ("VE") testified that a person with Breding's RFC could perform the work-related activities required in occupations such as ticket seller or parking lot attendant, which together represent over one hundred thousand jobs in the national economy. Admin. R. 27. The ALJ concluded that Breding was not disabled within the meaning of the Social Security Act. Admin. R. 28.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is such relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *See also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) ("Substantial evidence means more than a scintilla, but less than a preponderance.") (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.      Claims of Error

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Breding alleges the ALJ improperly discounted her subjective statements, three medical opinions, and her husband's lay witness statements. Breding contends these errors led the ALJ to assess her RFC in a manner that did not accurately reflect all of her functional limitations and to erroneously conclude that she is not disabled.

### II.     Credibility Determination

In her written application, Breding said she could not work because pain restricted her mobility and her ability to lift. Admin. R. 241. She said she could walk about 200 feet before needing to stop for five to ten minutes. She said she could pay attention for no longer than five minutes and could not finish tasks or follow instructions well. Admin. R. 246. In her testimony at the administrative hearing, Breding said that "fibro fog" made it difficult for her to stay focused on a task, maintain her train of thought, make basic change in a transaction, and remain dependable to show up to work on a daily basis. Admin R. 40, 48, 241. She said she had radiating pain and numbness from her shoulder to her fingers, and arthritic pain in her ankles, hands, and knees. As a result she could only lift ten pounds. Admin. R. 50-51. Breding said she had limited range of motion and could not sustain repetitive movement. Admin. R. 55. She also said that meeting deadlines made her anxious. Admin. R. 55.

The ALJ believed Breding's impairments could cause some degree of the symptoms she alleged, as reflected in the significant limitations in Breding's RFC for lifting, sitting, standing,

reaching, manipulation, postural activities, and simple, repetitive tasks. Admin. R. 24-25. The ALJ discounted Breding's statements about the limiting effects of her symptoms to the extent Breding claimed she could not engage in work activities within the limitations in her RFC assessment. Admin R. 25.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d at 1281–82. The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d at 1039. In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284.

The ALJ's written decision shows that she considered all the evidence pertaining to the proper factors for assessing Breding's credibility. The ALJ correctly noted that there were very limited objective findings in the medical records regarding Breding's complaints. Admin. R. 25. For example, just before the alleged onset of her disability, Breding saw her primary care doctor, Jeffrey Goldenberg, M.D., for abdominal pain. Dr. Goldenberg found no abnormalities on physical examination and ultrasound and diagnostic imaging were normal. Admin. R. 342. In June 2011 James McHan, M.D., performed a consultative evaluation and obtained generally benign findings, except two points of tenderness, a muscle spasm over the trapezius, and decreased range of motion

in the neck. Breding had normal coordination, station, and gait, full motor strength, bulk, and tone in all muscle groups, and intact fine and gross motor skills. Admin. R. 277-279. Diagnostic imaging showed age appropriate minimal degenerative changes in the thoracic spine and normal hips. Admin. R. 280-281.

In July 2011 Pamela Roman, Ph.D., performed a psychodiagnostic assessment with formal testing. Dr. Roman did not observe any abnormal behavior and said Breding had adequate insight, judgment and impulse control. She was cooperative and soft spoken. On testing, Breding scored in the low average range of intelligence and was able to perform basic calculation functions. On Beck inventories, Breding indicated moderate anxiety and minimal depression. Admin. R. 288.

Breding saw Dr. Goldenberg on a few other occasions, but he did not record any additional objective findings in his progress notes. The ALJ could reasonably draw an adverse inference as to Breding's assertions of debilitating functional limitations from the absence of clinical or objective findings. It would be reasonable to expect that the debilitating limitations Breding claimed would be reflected in some way in the medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (conflicts between the claimant's allegations and the objective medical evidence may undermine the claimant's credibility).

The ALJ also considered Breding's treatment history during the alleged period of disability. Admin. R. 25. The ALJ correctly observed that there were long periods during which Breding did not seek treatment for her allegedly disabling conditions. For example, in the months leading up to the alleged onset of disability, Breding saw Dr. Goldenberg for sleep difficulty, abdominal pain, a respiratory infection, and diet concerns related to her lipid levels, but not for any of her allegedly disabling conditions. Admin. R. 340, 342, 345, 348. Dr. Goldenberg noted that Breding had

struggled with fibromyalgia in the past, but that she was doing well currently and was not limited by myofascial pain. Breding attributed her sleep difficulty partly to anxiety and partly to her husband's snoring, but appeared to respond well to medication with Klonopin. Admin. R. 345, 348.

Dr. Goldenberg then saw Breding in June 2011 for a routine examination, where she had no complaints except cold hands and Dr. Goldenberg noted no abnormal findings. Admin. R. 302. She saw Dr. Goldenberg in December 2011 when she had no new major concerns but wanted a medication change because she felt sedated in the mornings on her previous medication. Admin. R. 299-300. In April 2012, Breding told Dr. Goldenberg that she had experienced an exacerbation of fibromyalgia symptoms. She said she usually could deal with her symptoms with meditation and relaxation and did not want treatment with medications. Admin. R. 296-297. Similarly, Breding declined treatment for anxiety and agoraphobia in December 2012. She told Dr. Goldenberg she preferred to limit her social activities with strangers and groups, but was comfortable with her symptoms and did not want treatment. Admin. R. 401, 403. The ALJ properly inferred from Breding's long periods without seeking treatment and from her refusal of treatment for her allegedly disabling symptoms that these symptoms were not as limiting as she alleged. Admin. R. 25. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995).

In January 2013 Breding saw Walter Hinz, M.D., for a rheumatology consultation. He found no evidence of underlying inflammatory process or connective tissue disease. He recommended improvement in her sleep, exercise and mood as the best approach to treatment of her symptoms. Admin. R. 389, 393. The ALJ correctly noted that Breding declined to follow through with exercise and treatment for her mood, although she did take medications to help her with sleep. Admin. R.

25. A claimant's failure to follow treatment recommendations supports an adverse inference as to the severity of the symptoms that such treatment recommendations are designed to alleviate. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). When a claimant alleges debilitating pain, the absence of treatment for long periods, and treatment with conservative means is powerful evidence regarding the severity of the pain she experienced. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ considered the medical opinions of Drs. McHan and Roman and the agency reviewing physicians, as well as the lay witness statement of Breding's husband, all discussed more fully below. Admin. R. 25-26. The ALJ's credibility determination is consistent with her interpretation of that evidence.

The ALJ noted that Breding made statements to her physicians that were inconsistent with her claims of debilitating symptoms. For example, just before filing her claim for disabling fibromyalgia, she told Dr. Goldenberg that her "myofacial pain is not limiting her right now." Admin. R. 345. Contrary to her claim of debilitating agoraphobia, Breding told Dr. Roman that she got along well with supervisors, coworkers and the public. Admin. R. 285. Although she alleged chronic debilitating "fibro-fog," she told Dr. Goldenberg in December 2011 that her morning grogginess was a side effect of medication she had discontinued; in June 2013 she told him that she had been groggy in the morning for one month and that it cleared up after one hour. Admin. R. 299-300, 394. These statements conflict with her claim of persistent debilitating fibro-fog.

As the foregoing demonstrates, the ALJ considered the proper factors for assessing Breding's credibility and reached conclusions reasonably drawn from substantial evidence in the record. The ALJ's explanation is clear and convincing and her findings are sufficiently specific to satisfy me that

she did not arbitrarily discredit Breding's statements. Accordingly, Breding has failed to establish

a basis to overturn the ALJ's credibility determination. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

F.3d at 1160; *Tommasetti v. Astrue*, 533 F.3d at 1039.

## III.    Medical Opinions

Breding contends the ALJ failed to properly evaluate the medical opinions of primary care

provider Dr.Goldenberg, consultative examiner Dr. McHan, and agency reviewing medical experts

Mary Ann Westfall, M.D., and Megan Nicoloff, Psy.D.

### A.     Dr. Goldenberg

Dr. Goldenberg provided Breding with primary care from 2007 through the relevant time for

her claim. During 2007, Breding complained of myofascial pain triggered by a work injury. On

physical examination, Breding had discomfort with palpation in the lumbar region of the spine and

pain in the cervical region that "limits her range of motion a bit." Admin. R. 375. She did not have

truly positive signs for fibromyalgia or findings that would support a diagnosis of fibrositis

syndrome. Dr. Goldenberg found normal pulses, reflexes, muscle strength, and muscle tone.

Admin. R. 375-76. In his treatment notes from May 2007, Dr. Goldenberg said "the patient is really

not able to work with the degree of pain that she is having right now" and he wrote a letter to her

employer to that effect. Admin. R. 376. In June 2007, Dr. Goldenberg indicated that Breding was

making progress but still had "significant limitations due to pain." Admin. R. 376. In September

2007, Dr. Goldenberg said that Breding continued to have myofascial pain, but "I think that she is

functioning quite well right now." Admin. R. 373. In June 2010, Dr. Goldenberg stated that Plaintiff

was "doing generally well and that her myofascial pain is not limiting her right now." Admin R.

345.

Although Breding alleges her disability did not begin until February 2011, she now claims

the ALJ erred by failing to discuss Dr. Goldenberg's treatment notes from May and June 2007, in

which he indicated she was unable to work at that time. The ALJ did not discredit Dr. Goldenberg's

assessment from May and June 2007 and, consequently, had no obligation to give reasons for doing

so. Dr. Goldenberg identified temporary limitations from a work injury that improved by September

2007, over three years before Breding alleges her disability began. The ALJ properly discussed Dr.

Goldenberg's findings that were contemporaneous with Breding's claim of disability. I find no error.

B.    Dr. McHan

As described previously, Dr. McHan performed a consultative medical evaluation in June

2011. Admin. R. 277-279. He made very limited objective findings, including two points of

tenderness to palpation, a muscle spasm over the trapezius, and decreased range of motion in the

neck. He found that Breding had normal coordination, station, and gait, full motor strength, bulk,

and tone in all muscle groups, and intact fine and gross motor skills. Admin. R. 277-279.

Diagnostic imaging showed age appropriate minimal degenerative changes in the thoracic spine and

normal hips. Admin. R. 280-281. He made no clinical findings based on functional capacity testing.

Despite the limited findings, Dr. McHan opined that Breding could stand or walk for less

than 2 hours a day, sit for up to four hours a day, engage in postural activities such as climbing,

balancing, stooping and so forth on an occasional basis for less than two hours, and occasionally

perform manipulative activities. Admin. R. 279. The ALJ gave Dr. McHan's assessment of

Breding's functional limitations little weight in her decision. Admin. R. 25.

Breding contends the ALJ gave insufficient weight to Dr. McHan's opinion regarding her

functional limitations. An ALJ can discount a physician's opinion in favor of the opinion of another

physician, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If the opinion is not contradicted by another physician, the ALJ may reject it by providing a clear and convincing explanation based on findings supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). Here the ALJ provided an adequate explanation under either standard for the weight she attributed to Dr. McHan's opinion.

The ALJ found Dr. McHan's functional assessment unsupported by his objective and clinical findings. For example, Dr. McHan's opinion that Breding could only engage in manipulation occasionally was contradicted by his clinical examination findings that she had no impairment of her fine and gross motor skills. An ALJ may properly reject the medical opinion of a doctor whose treatment notes and clinical observations are inconsistent with the doctor's assessment of the claimant's abilities. *Bayliss v. Barnhart*, 427 F.3d at 1216. Dr. McHan's opinion regarding Breding's limitations in standing, walking, sitting, and engaging in postural activities has no support in his objective examination findings or in the diagnostic imaging. Admin. R. 277-279, 280-281. An ALJ may properly reject a physician's opinion that is brief, conclusory, and inadequately supported by clinical or objective findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

The ALJ's conclusion that Dr. McHan relied primarily on Breding's subjective complaints in forming his opinion of her functional limitations can reasonably be inferred from the absence of clinical or objective support for the opinion. An ALJ is entitled to reject an examining physician's opinion that is premised primarily on subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ's reasoning in determining the weight to give Dr. McHan's opinion is clear and convincing and based on rational inferences drawn from substantial evidence in the record. Accordingly, the ALJ's determination to give diminished weight to Dr. McHan's opinion regarding functional limitations must be upheld, even if the record could reasonably be interpreted differently. *Batson,* 359 F.3d at 1193.

       C.     Reviewing physicians

The Commissioner relies on medical consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180. These consultants do not treat or examine the claimant, but form their opinions by reviewing the medical evidence in light of their expertise in the disability programs under the Social Security Act. The ALJ relied on the findings of Dr. Westfall and Dr. Nicoloff who reviewed the case file and made findings regarding Breding's RFC.

Dr. Westfall reviewed the case record in July 2012 and opined that Breding retained the functional capacity to perform work at the light level of exertion, with limitations on postural activities. Admin. R. 101-106. The ALJ considered Dr. Westfall's opinion and did not reject it. Accordingly, the ALJ had no obligation to justify discrediting the opinion.

Dr. Nicoloff reviewed the case record in December 2012 and reached conclusions similar to Dr. Westfall, but found Breding retained the ability to perform work at the medium level of exertion. Admin. R. 113. The ALJ rejected portions of Dr. Nicoloff's opinion because the record as a whole suggested Breding could not exceed light exertion with limited standing, walking, sitting, reaching and the other limitations in her RFC. Admin. R. 24, 26. Unsurprisingly, Breding does not challenge the ALJ's conclusion that she had greater limitation than those in Dr. Nicoloff's opinion.

Dr. Nicoloff also opined that Breding's mood disorder would preclude her from performing complex, detailed tasks consistently, but that Breding would "have no difficulty performing routine repetitive tasks of 1 to 2 steps." Admin. R. 119. Breding argues that the ALJ erred by failing to limit her RFC assessment to 1 to 2 step tasks. This argument cannot be sustained because Dr. Nicoloff did not express a functional limitation to 1 to 2 step tasks, *i.e.* Dr. Nicoloff said she was fully capable of such tasks but did not identify tasks that Breding could not do. Accordingly, the ALJ properly excluded this limitation from her RFC assessment.

In summary, I find no error in the ALJ's evaluation of the medical opinions.

## IV.   Lay Witness Statement

Breding's husband Brett Breding submitted a third party function report in support of her disability claim. Admin. R. 232-239. The ALJ correctly found that his statements regarding Breding's functional limitations were consistent with her own subjective assertions. The ALJ gave Mr. Breding's statements about her functional limitations little weight for the same reasons she discounted Breding's similar assertions. Admin. R. 25.

Lay witness statements as to a claimant's symptoms are competent evidence that an ALJ must consider. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ may discount the statements of a lay witness for reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). An ALJ need not clearly link the reasons to her determination that the lay witness testimony should be discounted, as long as she notes germane reasons somewhere in the decision and they are supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Further, when the statements of a lay witness are similar to the claimant's subjective complaints, then an ALJ's clear and convincing reasons for rejecting the

claimant's testimony are also germane to the lay witness. *Molina v. Astrue,* 674 F.3d at 1114; *Valentine,* 574 F.3d at 694. The ALJ properly discounted the credibility of Breding's subjective assertions and her reasons for doing so are also germane to the lay witness statement of Breding's husband. I find no error in the ALJ's evaluation of the lay witness statement.

## V.    Remaining Contentions

Breding's remaining contentions, *i.e.* that the ALJ failed to accurately assess her RFC and, therefore, erroneously concluded she was not disabled, depend on the claims of error previously rejected. Because Breding failed to carry her burden of establishing harmful error, the ALJ's decision must be affirmed.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___25__ day of August, 2016.


_____
Robert E. Jones, Senior Judge
United States District Court